## CIRCUIT COURT OF BALTIMORE CITY

Filed June 27, 1892.

### SMITH & HANNA
### VS.
### GEORGE H. FORSTER ET AL.

*Gans & Haman* for plaintiffs.

*F. C. Slingluff* for trustee.

DENNIS, J.—

1. Where one voluntarily accepts the position of trustee, under a deed of assignment for the benefit of creditors, with full knowledge of the circumstances attending the assignment, and the deed is subsequently attacked as fraudulent and void as against creditors; and yet, notwithstanding this hostile proceeding, the trustee proceeds, under ex parte orders of the Court, to administer the trust in accordance with the terms of the deed;

then, in the event of the deed being ultimately declared void, he is entitled to no commissions or other compensation for his personal services.

2. He will be allowed, however, for whatever he may have expended for the *preservation* of the property or in the management of it *with a view to its safety*, while the title was in dispute; such as payments for keeping accounts, employing agents to look after the assets, and similar services.

John E. Clark and George H. Forster, partners, doing business in this city under the firm name of Forster, Clark & Co., on December 14th, 1887, executed an agreement for the dissolution of the partnership; on the same day Clark conveyed all his interest in the firm assets to Forster, and the latter immediately made an assignment for the benefit of creditors to Fielder C. Slingluff as trustee. Thereupon, upon petition of the trustee, this Court assumed jurisdiction of the trust.

A few days afterwards the validity of this deed of trust was attacked by attachment proceedings; and subsequently, in April, 1888, Forster, Clark & Co. were adjudicated insolvents, and the present plaintiffs appointed permanent trustees. Under the attachment proceedings, it was ultimately determined by the Court of Appeals that the deed of trust was void.

In the meanwhile, and without waiting for the decision in the attachment case, the trustee under the deed of trust, proceeded to liquidate the estate under the *ex parte* orders of this Court; and in May, 1888, he filed a petition in which, after setting forth his services about the management and sale of the trust assets he further recited, "that the deed of trust under which he had been acting, has been attacked by numerous proceedings at law, by way of attachment, under which said proceedings an effort is being made to break said deed and thus secure to said attaching creditor a preference; that proceedings have also been taken in insolvency looking to the breaking of said deed of trust, and which said proceedings, if successful can only result in the destruction of the trust estate in the way of costs, fees, &c., without any beneficial result to the creditors, and as already reported to your Honor, your petitioner

has, under order of Court, employed counsel and is resisting the various assaults upon said deed of trust; *but if said attacks on said deed, or any of them, should be successful, and the deed should be declared null, your petitioner is doubtful if the jurisdiction of this Court should then further extend to said trust, and your petitioner might not be able to get his usual commissions on the trust estate which has come into his hands.*"

Upon this *ex parte* petition, the Court passed two orders under which the trustee was allowed commissions, amounting in the aggregate to something over nine thousand dollars.

The present bill, filed by the trustees in insolvency, asks among other items of relief for a recision of those orders and that the trustee may be directed in his accounting to pay over to them the amount of the commissions allowed him. (It is unnecessary to notice the other features of the bill, as those issues have all been disposed of, either by agreement or concession) ; so that the sole question before the Court is whether or not the trustee under the deed of assignment is entitled to retain the commissions allowed him, as against the claim therefor made by the trustees in insolvency, in their demand for an account.

In the case of Haydock Carriage Co. vs. Pier, 78 Wis. 581, when the question of what allowances were to be made to the trustees under a void assignment, but under which the trustee acted in good faith was considered, the Court says "The question to be determined in this appeal is, what expenses incurred by the assignees under a void assignment for the benefit of creditors will be allowed him as against a creditor of the assignor at whose suit the assignment has been declared void. Numerous adjudications have been cited by the counsel for the respective parties bearing upon this question; but it is unnecessary to refer to them in detail. They have been carefully examined, and the rule fairly deducible from them is that in a case like this, in which the assignee has acted in *perfect good faith and under the direction of the Court, believing the assignment valid,* he will be allowed for all such necessary disbursements as benefit, or are intended to benefit, all the creditors of the as-

signor, *excluding commissions of the assignee.*

In Hastings vs. Spencer, 1 Curtis 508, the Court says: "I must therefore consider that these assignees either knew all the facts upon which the deed has been declared void, or had the means of knowing them soon after the deed was delivered; and when they proceeded under these circumstances to execute such trusts, I consider that they acted at the peril of losing all compensation for their services, if creditors should interfere and the trust be declared fraudulent, by reason of facts within their knowledge. I do not impute to them any intentional wrong, but the principle of law must be applied to their case. Upon these principles they were executing trusts fraudulent as against creditors, and they had at least *constructive* notice of the fraud. They cannot be treated as "creditors upon the footing of a claim for such services."

Again, in Leavitt vs. Yates, 4 Ed. Chap. 205, the Court says, "I have considered the point with regard to the allowance to be made to the trustees in the breaking up of the trust and the surrender of the property; and although the trust deed provides for a salary as compensation to them out of the property assigned, yet as the whole thing was void as being contrary to law and not merely voidable at the instance of creditors, I am of opinion that they can have no just or valid claim to salary or compensation for any services they may have performed in relation to the trust or to the property. Their right in this respect fails them with the failure of their legal title, and the Court of chancery will not undertake to allow compensation for services voluntarily undertaken, performed in relation to property over which the parties could not lawfully assume to exercise a control for the purposes they intended."

It is unnecessary to multiply authorities; all are to the same effect as those already quoted; and they establish the doctrine that where a trustee voluntarily accepts a trust under a deed of assignment, with full knowledge of all the facts, and the deed is subsequently declared fraudulent and void as against creditors, he will not be allowed commissions or other compensation for his personal services, even though the deed should expressly provide therefor.

In this case, trustee voluntarily accepted the trust, with full knowledge of all the facts connected with the assignment, upon which the Court of Appeals declared the deed fraudulent and void, (although he was himself fully acquitted of any participation in the *actual* fraud). A week after the execution of the assignment, he knew it was attacked for fraud; he must be presumed to have known the law: and the petition, already quoted, in which he asked to be allowed commissions, before the decision by the Court of Appeals declaring the deed void, shows upon its face that he not only contemplated the possibility of that result but took the action he did for the sole purpose of forestalling it. There was no necessity for him to proceed to administer the trust; and assets were in no danger, and his services were not needed to preserve the fund; he took the risk of the deed being sustained—in which event he would have been entitled to his commissions, and he must take the consequences of its being declared void.

For whatever may have been expended in the *keeping* and *preservation* of the property or in the management of it, *with a view to its safety*, while the title was in dispute, the keeping of accounts, employing agents to look after the assets and similar services necessary to the safety and preservation of the fund, he is entitled to an allowance, upon a distinct and independent equity; but for all these services — including commissions to brokers for the sale of the assets—he has already been allowed without objection. For his own personal services, for the reasons already stated, he can be allowed nothing.